UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **STUEVE CONSTRUCTION, LLC,** an Iowa Limited Liability Company, **Plaintiff,** v. **WEBER PLUMBING AND HEATING, INC.,** an Illinois Corporation, **Defendant.** | Case No. 19-2072 |

REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion to Amend its Complaint (#80). Defendant filed a Response (#81) objecting to Plaintiff's Motion to Amend its Complaint. The Court ordered the parties to file supplemental briefing on whether Plaintiff's Motion should be denied for undue delay. Plaintiff filed a Supplemental Motion (#82) to Amend its Complaint. Defendant filed a supplemental brief (#83) in opposition to Plaintiff's motions. The Court recommends Plaintiff's Motion to Amend its Complaint (#80) and Supplemental Motion to Amend Complaint (#82) be denied; Defendant's request to reopen discovery be denied as moot; and Defendant's request to strike portions of the Complaint be denied as moot.

**I.     Factual Background**

This lawsuit pertains to the damage that was sustained to an in-floor heating system Defendant, Weber Plumbing and Heating ("Weber Plumbing"), installed. Plaintiff hired Weber Plumbing as a sub-contractor to build in-floor heating systems for three construction projects (the Sheldon Project, the Marissa Project, and the Neoga Project). In-floor heating systems, like the one in this case, run hot liquids through pipes in the floor to create heat. On March 16, 2017, Weber Plumbing submitted a proposal for

the Neoga Project that stated the in-floor heating system would be $12,200. The parties agree that the March, 16, 2017, proposal was accepted through performance.

Around October 2017, Plaintiff contacted Weber Plumbing about the cost of adding glycol to the three construction projects. (Court Order #77, p. 4). Weber Plumbing provided three pricing proposals for installing glycol at the three projects, including the Neoga Project. (Court Order #77, p. 4). Plaintiff approved the installation of glycol for all three projects. (Court Order #77, p. 4). On November 20, 2017, Weber Plumbing sent Plaintiff three invoices for adding glycol to the three projects, including an invoice for the Neoga Project. (Court Order #77, p. 4). These three invoices represented that Weber Plumbing completed the work of adding glycol to all three projects. (Court Order #77, p. 4). However, Weber Plumbing did not install glycol for the Neoga Project's in-floor heating system, and Weber Plumbing stated that its invoice for installing glycol at the Neoga Project was sent as a mistake. (Court Order #77, p. 5). Plaintiff paid Weber Plumbing $1,150.00 for installing glycol in the Neoga Project even though Weber Plumbing did not install glycol in that project.

Glycol (i.e. antifreeze) is used in in-floor heating systems to prevent the water in the system from freezing and cracking the pipes in the in-floor heating system. During this litigation, an employee for Weber Plumbing testified the Neoga Project should have glycol in its in-floor heating system because: (1) the structure is wooden; (2) the structure has no insulation; and (3) the owners leave the doors open all the time. (Court Order #77, p. 5). The employee from Weber Plumbing testified that in-floor heating systems are at risk of cracking if they are only filled with water because the water freezes, expands, and cracks the pipes. (Court Order #77, p. 5). After Weber Plumbing installed the in-floor heating system at the Neoga Project, the heating system cracked, leaked water, and damaged the floor. Plaintiff repaired the damage and seeks reimbursement from Weber Plumbing for the costs of repairs.

## II.    Procedural History

On March 26, 2019, Stueve Construction filed a four-count Complaint against Weber Plumbing for the damage caused by the in-floor heating system. (Complaint #1, p. 3-5). For Count I, Plaintiff alleges Weber Plumbing breached its contract with Plaintiff, as specified within the March 16, 2017, proposal. (Complaint #1, p. 2-3); (Court Order #77, p. 8). Importantly, Count I of Plaintiff's Complaint did *not* mention that the contract was modified in October 2017 for Weber Plumbing to install glycol for the three projects. (Complaint #1, p. 3-4). Additionally, the Complaint did *not* allege that Weber Plumbing failed to install glycol at the Neoga Project in violation of the October 2017 contract. (Complaint #1, p. 3-4). The deadline for amended pleadings was July 1, 2019, and fact discovery closed on August 21, 2020.

On September 21, 2020, Weber Plumbing moved for summary judgment on Plaintiff's four claims. (Weber Plumbing Br. #69, p. 1-19). In its brief in support of its motion for summary judgment, Weber Plumbing argued it was entitled to summary judgment for the breach of contract claim because Weber Plumbing did not breach the contract as alleged in the Complaint. Specifically, Weber Plumbing argued it did not breach the agreement from March 16, 2017, because that contract did *not* require Weber Plumbing to install glycol at the Neoga Project.[1]

On December 21, 2020, the Court granted Weber Plumbing's Motion for Summary Judgment for the breach of contract claim (i.e. Count I). (Court Order #77, p. 15). The Court reasoned Plaintiff's Complaint alleged Weber Plumbing breached the contract from March 16, 2017, and the Complaint never mentioned the March 16, 2017, contract was modified in October 2017 to add glycol to the three projects. (Court Order #77, p. 15). The Court concluded the October 2017 modification created an entirely new contract under Illinois law. *Joyce v. DLA Piper Rudnick Gray Cary LLP*, 888 N.E.2d 657, 662 (Ill. App. Ct. 2008) ("[A] contract modified by the parties creates a new single contract consisting of so many of the terms of the prior contract as the parties have not agreed to change, in

---

[1] As the Court stated above, Plaintiff did not request glycol to be added to the three projects until October 2017.

3

addition to the new terms on which they have agreed."); (Court Order #77, p. 8). To summarize, the Court granted Weber Plumbing's Motion for Summary Judgment because Weber Plumbing did *not* breach the March 16, 2017, contract as the Complaint alleged.

On January 29, 2021, Plaintiff filed a Motion to Amend its Complaint. Plaintiff's Motion to Amend was filed four months after the motion for summary judgment was filed, five months after discovery closed, and about nineteen months after the deadline to amend pleadings.[2]

### III.    Legal Standard

#### A. Amending Complaint After Discovery has Closed

Plaintiff's Motion to Amend the Complaint must satisfy a two-step process because it seeks leave to amend the Complaint after the expiration of the Court's scheduling order. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). First, Plaintiff must show "good cause" for the amendment under Rule 16. *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (citing Fed. R. Civ. P. 16(b)). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking amendment." *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (citations omitted); *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). "[C]ourts have 'broad discretion' to deny leave when there is undue delay or [when an] amendment would prejudice the defendants[.]" *Thomas v. Mashak*, 743 F. App'x 702, 703–704 (7th Cir. 2018).

Second, Plaintiff's Motion to Amend its Complaint must demonstrate that the amendment was proper under Rule 15. Under Rule 15(a)(2) "a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "With a late motion for leave to amend, the underlying concern is the prejudice to the defendant

---

[2] The deadline for amended pleadings was July 1, 2019, and fact discovery closed on August 21, 2020.

4

rather than simple passage of time." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 832 (7th Cir. 2016). "And while delay on its own is usually not reason enough for a court to deny a motion to amend, the longer the delay, the greater the presumption against granting leave to amend." *Johnson v. Cypress Hill*, 641 F.3d 867, 871–72 (7th Cir. 2011) (internal citations and quotation marks omitted). "[T]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 875 (7th Cir. 2011). Courts "have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (citations omitted).

Courts have repeatedly concluded that plaintiffs lacked "good cause" when they sought to amend a complaint months after the deadline to amend pleadings. *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (affirming the district court's holding that good cause did not exist because plaintiff sought leave to amend the complaint nine months after the deadline to amend pleadings and sixteen months after plaintiff received notice that the claim was deficient); *Carroll v. Stryker Corp.*, 658 F.3d 675, 684 (7th Cir. 2011) (affirming the district court's holding that good cause did not exist because plaintiff sought leave to amend the complaint seven months after the deadline to amend pleadings and plaintiff's failure to anticipate an obvious defense did not excuse this delay); *Alioto v. Town of Lisbon*, 651 F.3d 715, 720 (7th Cir. 2011) (affirming the district court's holding that good cause did not exist because plaintiff sought leave to amend eight months after the deadline to amend pleadings, and plaintiff should have been aware that his complaint could not survive a motion to dismiss).

Additionally, courts have frequently denied motions to amend pleadings that were file *before* a motion for summary judgment was filed. *See Thomas v. Mashak*, 743 F. App'x 702, 703–04 (7th Cir. 2018) ("Thomas's motion was untimely: not until one week before the deadline for dispositive motions did he move to amend his complaint."); *see also Johnson v. Cypress Hill*, 641 F.3d 867, 871–73 (7th Cir. 2011) ("Johnson's request to

5

change his claims on the eve of summary judgment is exactly the sort of switcheroo we have counseled against."); *see also Feldman v. American Memorial Life Ins. Co.*, 196 F.3d 783, 793 (7th Cir. 1999) ("The prejudice to the new defendant and the delay to Prairie States, well after the close of discovery and on the eve of summary judgment proceedings, justified the district court's denial of [Plaintiff's Motion to Amend its Complaint].").

IV.  Analysis

    A. Good Cause

Weber Plumbing argues Plaintiff has not established the requisite good cause for an amended complaint because: (1) discovery is closed; (2) the Court already decided Weber Plumbing's Motion for Summary Judgment; and (3) Weber Plumbing has not conducted discovery on the unknown glycol agreement. (Weber Plumbing Br. #81, p. 4). Weber Plumbing maintains that Plaintiff should have sought leave to file an amended complaint at an earlier date, and it would be prejudiced if the Court granted leave to amend the Complaint. (Weber Plumbing Br. #81, p. 5); (Weber Plumbing Supp. Br. #85, p. 5). Specifically, Weber Plumbing argues it will be prejudiced if the Court grants Plaintiff leave to amend the Complaint because Weber Plumbing is not able to explore new defenses, develop evidence, and prepare for trial based on the new breach of contract claim. (Weber Plumbing Br. #85, p. 5-6).

Here, Plaintiff received notice that his Complaint was deficient at the latest when Weber Plumbing filed its Motion for Summary Judgment on September 21, 2020. Plaintiff waited for a ruling from the Court, then moved to amend its Complaint on January 29, 2021, more than four months after Plaintiff received notice of the Complaint's deficiency.[3] In these circumstances, courts primarily consider the diligence of the party seeking amendment. Plaintiff was not diligent in seeking leave to amend the complaint, waiting nineteen months after the deadline to amend pleadings and four months after it received explicit notice that its Complaint was deficient. *See Alioto v. Town of Lisbon*, 651 F.3d 715,

---

[3] Additionally, the Court notes Plaintiff was given notice that its Complaint was deficient when Weber Plumbing asked Plaintiff to clarify its breach of contract claim, and Plaintiff responded on March 5, 2020. (Plaintiff Ex., #80-4, p. 5-6). The Court notes that Plaintiff waited almost eleven months from this date to request leave to amend.

719 (7th Cir. 2011) (concluding the plaintiff was not diligent in seeking leave to amend because he waited eight months after the deadline to amend pleadings and two months after he received notice his complaint was deficient).

Plaintiff argues the Court should permit the amendment because Weber Plumbing will not be prejudiced by the amendment. (Plaintiff Br. #80, p. 2). Plaintiff reasons Weber Plumbing was aware that Plaintiff's breach of contract claim pertained to Weber Plumbing's failure to add glycol to the Neoga Project as specified in the October 2017 contract. (Plaintiff Br. #80, p. 3-4). Moreover, Plaintiff notes that it provided Weber Plumbing with notice of its new breach of contract theory before depositions were taken.[4] (Plaintiff Br. #80, p. 9).

Nevertheless, Weber Plumbing would be unduly prejudiced if the Court permitted Plaintiff to amend its Complaint this late in the litigation. First, Weber Plumbing conducted discovery and filed a Motion for Summary Judgment in reliance on the allegations and claims in Plaintiff's Complaint. In other words, if the Court were to grant Plaintiff leave to amend, then the Court would be voiding all the research, discovery, and drafting Weber Plumbing conducted throughout the litigation on the original breach of contract claim. Second, Weber Plumbing has not been able to test or conduct discovery relating to the new breach of contract claim. Although the Court *could* permit additional discovery and motions on the new breach of contract claim, Weber Plumbing already expended resources to defeat the original breach of contract claim, and allowing the amendment at this late stage would simply reset the litigation to its starting point. The Court denies Plaintiff's Motion because it lacks "good cause" for the amended complaint; Plaintiff was not diligent in seeking amendment; and Weber Plumbing would be unduly prejudiced if the Court granted Plaintiff's Motion.

---

[4] Specifically, through interrogatories, Weber Plumbing asked Plaintiff to explain the factual basis for its breach of contract claim. (Plaintiff Ex., #80-4, p. 5-6). In response, Plaintiff explained that Weber Plumbing breached the October 2017 contract by failing to install glycol at the Neoga Project. (Plaintiff Ex., #80-4, p. 5-6).

7

B. **Defendant's Additional Requests for Relief**

Weber Plumbing argues that Plaintiff's amended complaint improperly requests attorneys' fees and prejudgment interest, asking the Court to strike these portions of the amended complaint. (Weber Plumbing Br. #81, p. 6). Weber Plumbing also asks the Court to re-open discovery if the amended complaint is allowed. As the Court recommends that the Motion for Leave to Amend the Complaint be denied, the additional requests for relief from Defendant are moot. That portion of Defendant's Response therefore should be denied.

V. **Conclusion**

The Court recommends Plaintiff's Motion to Amend Complaint (#80) and Supplemental Motion to Amend Complaint (#82) be DENIED; Weber Plumbing's request to reopen discovery (#81) be DENIED as MOOT; and Weber Plumbing's Motion to Strike (#81) be DENIED as MOOT. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal.

ENTERED this 9th day of June, 2021.

                                                            s/ERIC I. LONG
                                         UNITED STATES MAGISTRATE JUDGE